UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**FREDERICK CHARLES PRESTON, JR.**          **CIVIL ACTION NO. 23-0324**

**VS.**                                                             **SECTION P**

                                                                         **JUDGE TERRY A. DOUGHTY**

**PAT SMITH, ET AL.**                                  **MAG. JUDGE KAYLA D. MCCLUSKY**

**REPORT AND RECOMMENDATION**

  Plaintiff Frederick Charles Preston, Jr., a prisoner at Tensas Parish Detention Center ("TPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately March 9, 2023, under 42 U.S.C. § 1983. He names the following defendants: Warden Pat Smith, Deputy Warden Nolan Bass, Chief of Security Antonio Johnson, and Head Nurse D. Harvey.[1]

  For reasons that follow, the Court should retain Plaintiff's claims of lack of medical care and associated requests for compensation and medical care against Warden Pat Smith and Nurse D. Harvey. The Court should dismiss Plaintiff's remaining claims and requests for relief.

**Background**

  Plaintiff claims that since he arrived at TPDC on May 24, 2022, he has been subject to the following conditions of confinement: "mold in the shower of Delta Dorm," mold on the ceiling of Cell 2 in Bravo Dorm, spotted mold on the ceiling in Cell 3 in Bravo Dorm, sinks not producing water, sinks not draining water, an exposed electrical wire in a light, inoperable urinals, and black metal sheets over the walls in Bravo Dorm which "set the mental mood of

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

depression, suicidal thoughts and negative attitudes." [doc. # 4, pp. 3-4]. In an amended pleading, Plaintiff adds that he was "left in a cell with access to showers only every 48 hours." [doc. # 8, p. 2]. He also claims: "Months of toilets not flushing and sinks not working or stopped up is so regular that we celebrate two things working in tandem." *Id.* at 3.

Plaintiff claims that Warden Pat Smith was aware of the conditions in the facility because he wrote "countless complaints" to her. [doc. # 8, p. 1]. He claims that Assistant Warden Nolan Bass was aware of the conditions. *Id.* He claims that Major Antonio Johnson failed to adequately train staff "to handle the dangerous conditions of this facility." *Id.* at 2.

In his initial operative pleading,[2] Plaintiff claims that he was "placed on lockdown in Bravo [Dorm] 3 times for a period of 19 days (2/16/23-3/7/23), 12 days (3/11/23-3/23/23) and 6 days (3/28/23-4/3/23) all without a write up." [doc. # 4, p. 3]. In an amended pleading, he claims: "They continually leave us in lockdown cells without running water and in cells with mold and exposed wire." *Id.*

Plaintiff claims that in February 2023, a small hole in his tooth became worse and caused the tooth to decay and become so sensitive that he could not eat. [doc. # 8, p. 2]. While he was in lockdown, he "was refused medical treatment even after declaring a medical emergency." [doc. # 4, p. 3]. He wrote at least six requests for a tooth extraction, but his requests were ignored. *Id.* He also submitted several requests for pain medication. *Id.* Nurse Harvey responded and told him to "get over the counter medicine from the pill cart during pill call." *Id.* Plaintiff claims, however, that he was told that "they don't have any or not to ask for anything." *Id.* That said, he was able to obtain "IBU's for [his] pain" a "couple times a week[.]"[3] [doc. # 8,

---

[2] Plaintiff's initial filing, [doc. # 1], is deficient and therefore inoperative. *See* L.R. 3.2.

[3] By IBU's, Plaintiff presumably refers to ibuprofen.

p. 2]. He adds: "Since February, I've been told I am on the list for the dentist but 12 weeks of continuous waiting is cruel and unusual. . . . I suffered continuously for months and literally begged to go to the dentist." *Id.*

Plaintiff alleges that Assistant Warden Bass was aware of his medical needs. He also alleges that he "made [Warden Smith] aware of his [his] medical crisis" and told her that he could not eat or chew properly. [doc. # 8, p. 1]. He claims that "nothing was done." *Id.* He has been unable to "eat or get out [of] the bed" for long periods of time because of his pain. *Id.*

In his initial pleading, Plaintiff claims that there were fights, lock fights, and knife fights at TPDC which "went unchallenged by security . . . ." [doc. # 4, p. 4]. In an amended pleading, Plaintiff claims: "This facility's carelessness and deliberate indifference has led to two recent deaths, Nov. 2, 2002, and May 9, 2023. Both deaths were the results of being in an unsupervised lockdown dorm where security may not be seen for 6 to 10 hours at a time sometimes." [doc. # 8, p. 3].

Plaintiff claims that he has been consistently threatened and "treated with hostility" since he arrived at TPDC "because of [his] current lawsuit against another jail and deputy." *Id.*

Plaintiff seeks: (1) an investigation; (2) compensation for pain and suffering, emotional distress, and mental anguish; (3) a transfer; (4) a "maintenance plan for painting paintable surfaces"; (5) to enjoin defendants from transferring him to "any disciplinary camps or facilities"; (6) to enjoin the facility to honor "any and all medical requests"; and (7) protection from officer-sanctioned "hits[.]" [doc. # 4, pp. 5-6].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a

prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional

conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

To reiterate, Plaintiff claims that in February 2023, a small hole in his tooth became worse and caused the tooth to decay and become so sensitive that he could not eat. [doc. # 8, p. 2]. While in lockdown, he "was refused medical treatment even after declaring a medical emergency." [doc. # 4, p. 3]. He wrote at least six requests for a tooth extraction, but his requests were ignored. *Id.* He also submitted several requests for pain medication. *Id.* Nurse Harvey responded and told him to "get over the counter medicine from the pill cart during pill call." *Id.* Plaintiff claims, however, that he was told that "they don't have any or not to ask for anything." *Id.* That said, he was able to obtain "IBU's for [his] pain" a "couple times a week[.]" [doc. # 8, p. 2]. He adds: "Since February, I've been told I am on the list for the dentist but 12 weeks of continuous waiting is cruel and unusual. . . . I suffered continuously for months and literally begged to go to the dentist." *Id.*

Plaintiff alleges that he "made [Warden Smith] aware of his [his] medical crisis[,]" and told her that he could not eat or chew properly. [doc. # 8, p. 1]. He claims, however, that "nothing was done." *Id.* He has been unable to "eat or get out the bed" for long periods of time because of his pain. *Id.*

For relevant relief, Plaintiff seeks compensation and an order instructing the "facility [to] honor any and all medical request[s] made . . . ." [doc. # 4, p. 6].

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an

6

inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

A. Assistant Warden Bass

Plaintiff baldly claims that Assistant Warden Bass was aware of his medical needs. [doc. # 8, p. 1]. He adds only that Bass "chose to ignore the complaints of the inmates in his care . . . ." *Id.*

This claim is impermissibly conclusory. While Plaintiff alleges that Bass ignored complaints of other inmates,[5] he does not allege that Bass ignored *his* serious medical needs or requests for medical care. Plaintiff simply does not supply enough detail to state a plausible claim of deliberate indifference to his medical needs. The Court should dismiss this claim against Bass.

B. <u>Nurse D. Harvey and Warden Pat Smith</u>

The Court should retain Plaintiff's claims of lack of medical care—including only his associated requests for compensation and medical care—against Nurse D. Harvey and Warden Pat Smith. While his pleading is not a paragon of clarity, he plausibly alleges that he had a serious medical need as of February 2023, and that Harvey and Smith knew of, yet disregarded, a substantial risk of serious harm.

Plaintiff alleges that Harvey and Smith essentially failed to provide any meaningful treatment for his serious medical need. While he received some ibuprofen, he suggests that it was ineffective because he continued (and continues) to suffer from severe pain and an inability to eat. While he was placed on a waiting list for a dentist, he has not seen a dentist and has waited over 12 weeks for emergency care. Construing Plaintiff's allegations liberally and in his favor at this early stage of the proceeding, he states plausible claims on which relief may be granted.[6]

---

[5] Plaintiff does not specify whether Bass ignored complaints concerning conditions of confinement or other types of complaints.

[6] *See generally Thompson v. Williams*, 56 F.3d 1385 (5th Cir. 1995) (unpub.) ("Although inartfully pleaded, Thompson alleged that the dentist diagnosed the need for Thompson's teeth to be extracted, dental surgery which the dentist was not authorized to perform. Further, Thompson alleged that this required medical treatment is not being provided, that he experiences a considerable amount of suffering, and that the jail officials do not appear to be arranging for the surgery or speeding up his transfer to a TDCJ facility where Thompson can receive the needed

### 3. Separation of Powers

Plaintiff asks the Court to order an "investigation into the lack of security and blatant disregard to inmates' medical request[s], A.R.P.'s, request forms and mental health service[s]." [doc. # 4, p. 5].

Investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government. In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys. In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys. *See* LA. CODE. CRIM. PROC. arts. 61 and 62. Accordingly, to the extent Plaintiff asks the Court to investigate defendants, the Court should dismiss the request as frivolous.[7]

### 4. Transfer

Plaintiff asks the Court to transfer him to a different facility. [doc. # 4, p. 6]. He also

---

medical work."); *Eugene v. Deville*, 791 F. App'x 484, 485 (5th Cir. 2020) (unpub.) (finding, where a plaintiff experienced a 10-month delay, following multiple requests for care, in receiving treatment for broken teeth, that "[s]uch allegations could show that the medical staff were aware of his pain and failed to provide care."); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999) (Prisoner's allegations that a physician and nurses ignored urgent and repeated requests for immediate medical treatment for his broken jaw and excruciating pain stated a claim).

[7] Plaintiff should, if he wishes, direct his concerns to a local, state, or federal police agency. That said, Plaintiff should be aware that if a prosecuting authority investigates and chooses to forego filing charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281. The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); *see, e.g., Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

asks the Court to prevent his transfer to "any disciplinary camps or facilities[.]" *Id.*

A prisoner has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections,[8] the Court should dismiss his request for a transfer and his request to prevent his transfer to certain facilities.

---

[8] *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

### 5. Miscellaneous Relief

Plaintiff asks the Court to "order a thorough and consistent maintenance plan for painting paintable surfaces." [doc. # 4, p. 6]. However, Plaintiff does not join this request to any plausible claim,[9] identify a responsible defendant, or explain how a lack of a "consistent maintenance plan for painting paintable surfaces" violates federal law or his constitutional rights. The Court should deny this requested relief.

### 6. Protection from Officers

Plaintiff seeks "protection[,]" alleging that "the facility is known for the officers sanctioning hits on inmates . . . ." [doc. # 4, p. 6]. Plaintiff lacks standing to pursue this relief.

"A litigant seeking redress in federal court must show that he has standing to pursue his claims." *Adams v. Pearl River Valley Water Supply Dist.*, 2022 WL 2829756, at *3 (5th Cir. July 20, 2022). "Litigants must also demonstrate standing with respect to the *type* of relief they seek." *Id.*

"To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief. Courts have divided this rule into three components: injury in fact, causation, and redressability." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (internal footnotes omitted).

"Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. The redressability requirement limits the relief

---

[9] At best, Plaintiff claims that there are black metal sheets over the walls in Bravo Dorm which "set the mental mood of depression, suicidal thoughts and negative attitudes." However, he does not allege that the sheets are (or are not) painted, that the surface is "paintable," or that a consistent maintenance/painting plan would remedy his concerns.

that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries. Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact. To be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical. The purpose of the requirement that the injury be 'imminent' is to ensure that the alleged injury is not too speculative for Article III purposes. For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.* (internal footnotes, quotation marks, and quoted sources omitted).

Here, Plaintiff does not allege any continuing injury or any sufficiently threatened injury. He does not allege that there is a substantial risk that any defendant will sanction, arrange, or otherwise plan an attack on him. He does not, in other words, describe an imminent injury; rather, the risk he describes is too speculative to establish standing. His fear is conjectural or hypothetical and only amounts to *possible* future injury. *See Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) ("[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."); *Adams*, 2022 WL at *4 (finding no standing where the plaintiffs "at best offered [a]llegations of *possible* future injury that they have not claimed is imminent, or '*certainly*

*impending*,' or anything other than speculative."). Simply put, there is no continuing or threatened conduct to enjoin.[10] The Court should dismiss this requested relief.

**7. Limitation on Recovery Under 42 U.S.C. § 1997e(e)**

Plaintiff seeks compensation for pain and suffering, emotional distress, and mental anguish. [doc. #s 4, p. 5; 8, p. 2].

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Here, Plaintiff "brought" this action when he was incarcerated. [doc. # 4, p. 2]. Except for his claim concerning lack of medical care, he seeks monetary compensation for only mental, emotional, or de-minimis physical injuries.

---

[10] *See Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308 (5th Cir. 1997) (plaintiff lacked standing to seek injunctive relief because there was no threat of present or future harm); *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (denying injunctive relief when plaintiff could not show that she suffered any continuing harm or that there was a real or immediate threat of recurring harm); *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (speculative future injury alone is not enough to warrant injunctive relief).

As to Plaintiff's remaining claims, the undersigned construes Plaintiff's phrase, "pain and suffering," as an allegation of, at best, mental or emotional injury unaccompanied by greater-than-de-minimis physical pain. *See Herron v. Patrolman No. 1*, 111 F. App'x 710, 713 (5th Cir. 2004) (holding that a "temporary increase of pain . . . is at most a *de minimis* injury that will not support a claim of mental or emotional suffering."). Plaintiff only attributes his pain to the alleged lack of medical care mentioned above; he does not allege that he suffered a greater-than-de minimis physical injury from any of the actions or omissions comprising his remaining claims.

Overall, Plaintiff does not allege that he suffered a greater-than-de-minimis physical injury or any other injury compensable by monetary relief. Consequently, the Court should—excepting his claims of lack of medical care against Nurse D. Harvey and Warden Pat Smith—dismiss Plaintiff's request for compensatory relief.

Plaintiff does not seek any cognizable relief for his remaining claims. As above, the undersigned recommends dismissing Plaintiff's requests for: compensation, a transfer, the prevention of a transfer, a maintenance plan for painting, and protection from officer-sanctioned attacks. In addition, Plaintiff's ostensible request for medical care is unrelated to any of his remaining claims.[11] Accordingly, the Court should dismiss Plaintiff's remaining claims.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that—with the exception of Plaintiff Frederick Charles Preston, Jr.'s claims of lack of medical care and associated requests for compensation and medical care against Warden Pat Smith and Nurse D. Harvey—Plaintiff's

---

[11] Plaintiff requests specifically: "I ask the courts to make this facility honor any and all medical request[s] made and have the forms answered promptly." [doc. # 4, p. 6]. Construed liberally, Plaintiff appears to seek medical care.

14

remaining claims and requests for relief be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 7th day of August, 2023.

Kayla Dye McClusky
United States Magistrate Judge